# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ACCENTURE LLP ,  | ) |
| Plaintiff,  | ) |
|  | ) No. 06-CV-1270 |
| v.  | ) |
|  | ) |
| CSDV-MN LIMITED PARTNERSHIP  | ) |
|  | ) |
| Defendants.  | ) |
|  | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendant CSDV-MN Limited Partnership has filed a Motion to Dismiss plaintiff Accenture LLP's complaint for lack of subject matter jurisdiction. For the reasons set forth below, we deny this motion.

## BACKGROUND

Plaintiff Accenture LLP is an Illinois limited liability partnership with its principal place of business in Chicago, Illinois. (Compl. ¶ 1.) Defendant CSDV is a Delaware limited partnership and the successor landlord of a Minneapolis office building in which Accenture leased nine floors of space. (Compl. ¶¶ 5-7.) The California Teachers Retirement System (CalSTRS), a teacher's retirement fund created by California Education Code § 22001 *et seq.*, is the sole equity member of CSDV-GP, LLC, which is the general partner in CSDV. (*See* CSDV Br. at 4.)

On May 17, 2006, CSDV filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, arguing that CSDV, by virtue of its relationship with CalSTRS, enjoyed sovereign immunity from suit. (Dkt. No. 14.) We denied that motion, finding that CSDV did not

function as an arm of the State of California. (Dkt. No. 34, at 4-5.) On December 4, 2006, CSDV filed this motion, arguing that because the citizenship of a partnership is the citizenship of the partners and CalSTRS is an "arm of the State of California," CSDV is not a "citizen" of any state, and is not subject to diversity jurisdiction. (CSDV Br. at ¶¶ 11, 13, & 17-25.) Accenture agrees that CSDV's "citizenship for diversity purposes depends on the citizenship of CalSTRS," but argues that CalSTRS is not an arm or alter ego of the State of California, thereby preserving diversity jurisdiction. (Accenture Br. at 4.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide," and must be conferred upon the federal courts. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may look beyond the complaint to other evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *See Kontos v. U.S. Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ANALYSIS

While a political subdivision of a state is a citizen of a state for diversity purposes, an "arm or alter ego of the State" is treated as the state itself, automatically defeating diversity jurisdiction. *Moor v. Country of Alameda*, 411 U.S. 693, 717 (1973) The Seventh Circuit in *Takle v. University of Wisconsin Hospital and Clinics Authority*, 402 F.3d 768 (7th Cir. 2005) discussed whether a nominally public entity – in that case the University of Wisconsin Hospital and Clinics Authority

2

– was an arm or alter ego of the State of Wisconsin. In concluding that the Hospital was not an arm or alter ego of the state, the Seventh Circuit focused on three factors: 1) was the Hospital "financed by the state, so that any judgment against it would be paid out of state funds;" 2) did the state control the activities of the Hospital; and 3) was the Hospital acting as the "agent" of the state in conducting the activities giving rise to the suit. *Id*. at 769-773; *see also Travelers Ins. Co. v. Teacher Retirement Systems of Texas*, 1993 WL 34757, at *2 (N.D. Ill. Feb. 4, 1993). Evaluating those three factors here, we likewise find that CalSTRS is not an arm or alter ego of the State of California.

First, CalSTRS is not publicly financed "so that any judgment would be paid out of state funds." *See id.* at 769. CalSTRS funds the teachers' retirement pension funds through contributions from employers, members, and the state, as well as through investment earnings. (Ex. A to Reply Br., at 16.) The State of California contributions constitute the smallest portion (roughly 6.1% in 2005) of CalSTRS' income. (*Id.*) In 2005, CalSTRS' net assets increased by over $19.7 billion. (*Id.*) Member/participant contributions accounted for $2.3 billion, employers contributed another $2.1 billion, the State of California contributed $1.2 billion, and CalSTRS earned an additional $14.1 billion through earnings from a $129 billion diversified investment portfolio and other income. (*Id.*) As CalSTRS explained, that investment income funds CalSTRS administrative expenses throughout the year: "The cost of administering the State Teachers' Retirement Plan is financed through the investment earnings of the plan." (*Id.* at 3.)

At least one court in this District has previously evaluated whether a state teachers' retirement system that relied in large part on investment income could be treated as an arm of the state. *Travelers*, 1993 WL 34757. The *Travelers* court noted, "[t]he mere fact that [plaintiff] derives some of its income from Texas does not mean that it is entitled to partake of the state's immunity."

3

*Id.* at *2 (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Gary A. v. New Trier High School Dist.*, 796 F.2d 940, 945 (7th Cir.1986) (holding "[t]he fact that a local school district receives a significant amount of money from the state does not mean that it is an arm of the state"). Because the *Travelers* defendant could not "rebut [plaintiff's] contention that the requested relief would be satisfied by investment income," the court held that the teachers' retirement system in that case was not an arm or alter ego of the state. *Travelers*, 1993 WL 34757, at *3. So, too, here: given the relative unimportance of California's contributions to CalSTRS' revenue stream and net assets, it does not appear that any judgment against CalSTRS "*would be* paid out of state funds" instead of investment income. *Takle*, 402 F.3d at 769 (emphasis added).

Second, CalSTRS is not subject to "continued state control" by the State of California. *See id.* at 771. As explained in Cal. Educ. Code §§ 222000 *et seq.* (West 2006), CalSTRS is governed by a Board of Directors, which has the power to "invest the assets of the fund through the purchase, holding, or sale thereof of any investment, financial instrument or financial transaction when the investment, financial instrument, or financial transaction is prudent in the informed opinion of the board (§ 22203.5); contract for investment personnel (§ 22352); and to commence legal proceedings against third parties (§§ 22359 & 24500). These abilities to own property, enter into contracts, and to sue and be sued indicate that CalSTRS is more a private entity than an arm of the state. *See Travelers*, 1993 WL 34757, at *5 (the powers "to enter into contracts, own property, sue and be sued [are] powers indicating independence."). CSDV argues that because some of the Directors are appointed by the Governor of California and confirmed by the California Senate, CalSTRS does not have any organizational characteristics of a private entity. (Reply Br. at 12.) However, as the *Takle* court explained, "the power to appoint is not the power to control," particularly where, as here, "that

4

power is diffused among different public officials who may hold quite different views." *Takle*, 402 F.3d at 770. CSDV also points to statutory language that indicates CalSTRS was created to provide "stable and full funding over the long term" for the retirement plan, and to provide "for an efficient, equitable and economic means of satisfying pension obligations of the state." (Reply Br. at 7) (citing Cal. Educ. Code § 22955(d) & Cal. Gov. Code § 16911). None of these statements clearly indicates that CalSTRS was intended to function as an alter ego of the state; that CalSTRS benefits the State of California is not enough to establish it as an arm of the state. *Takle*, 402 F.3d at 769-70 & 771 ("the fact that an entity provides, willingly or not, benefits to the state does not make it the state."). CalSTRS conducts and supervises a wide array of traditionally private activities, ranging from the management of a $129 billion investment portfolio to its involvement with CSDV, a party here because of its role as a landlord of commercial real estate in Minneapolis, Minnesota. The State of California does not control CalSTRS to an extent that converts CalSTRS into an arm or alter ego of the state.

Third, it is undisputed that CalSTRS is not a party to and is not alleged to have any direct involvement in activities connected to this suit. Therefore, CalSTRS could not – and did not – act as the "agent" of the State of California in conducting the activities giving rise to the suit. *Takle*, 402 F.3d at 772.

For these reasons, we find that CalSTRS is not an arm or alter ego of the State of California and, therefore, is a "citizen" of California for diversity of jurisdiction purposes. Accordingly, CSDV's motion to dismiss for lack of subject matter jurisdiction is denied.

It is so ordered.

/s/ Marvin E. Aspen
MARVIN E. ASPEN
United States District Judge

Dated: December 27, 2006