# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ACCENTURE LLP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 06 C 1270 |
| v. | ) |
| | ) Judge Marvin E. Aspen |
| CSDV-MN LIMITED PARTNERSHIP, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER AND OPINION

Presently before us in this lease dispute action are cross-motions for summary judgment filed by Plaintiff Accenture LLP ("Accenture"), an Illinois limited liability partnership with its principal place of business in Chicago, Illinois (Pl. Facts ¶ 3; Def. Facts ¶ 1), and Defendant CSDV-MN Limited Partnership ("Landlord"), a Delaware limited partnership and the current owner of the commercial office building located at 333 South Seventh Street, Minneapolis, Minnesota. (Pl. Facts ¶ 6; Def. Facts ¶ 2). Accenture argues that due to Landlord's inconsistent application of the term "Building" within the lease, it is either entitled to a declaration that it has overpaid real estate taxes since 2001 and damages for breach of contract or, in the alternative, a declaration that it has overpaid operating expenses since 2001 and damages for breach of contract. In its cross-motion, Landlord seeks summary judgment on its counterclaim for a declaration that it has properly calculated both real estate taxes and operating expenses under the Lease. For the reasons set forth below, we grant in part Landlord's Motion and deny Accenture's Motion.

1

## SUMMARY OF FACTS

On May 31, 1993, Accenture entered into a lease for several floors of office space in this building ("Lease") with the successor landlord of the property, Metropolitan Life Insurance Company. (Pl. Facts ¶¶ 6, 8; Def. Facts ¶ 6). The Lease runs through 2012 and includes at least ten amendments. (Pl. Facts ¶ 10; Def. Facts ¶¶ 16-25).

Under the Lease, Accenture is responsible, among other things, for paying real estate taxes on "the Land or the Building and any skyway bridges attached to the Building," as well as its "Tenant's Share" of operating expenses. (Lease ¶ 4(A)(ii)-(iii)). The "Tenant's Share" is calculated by dividing the "total square footage of rentable area . . . in the Leased Premises" by "the total square footage of rentable area in the Building." (Schedule ¶ 4).

In 2001, Accenture conducted an audit and discovered that it was being assessed for a share of the real estate taxes attributable to the parking garage. (Pl. Facts ¶ 25). However, the audit also showed that Landlord was not including the parking garage in its calculation of Accenture's share of operating expenses, despite the fact that both of these definitions include the word "Building." (Pl. Facts ¶ 26).

On March 8, 2006, Accenture filed a four-count complaint against CSDV, alleging that CSDV had since 2001 overcharged Accenture for Accenture's share of building operating expenses or, in the alternative, had since 2001 improperly charged Accenture for a portion of real estate taxes attributable to the parking garage space in the office building. (Compl. ¶¶ 6, 9-15). Accenture seeks declarations in the alternative that each practice is a breach of Accenture's lease. (Compl. ¶¶ 8, 26, 28). Accenture also brings claims in the alternative for breaches of the lease agreement. (Compl. ¶¶ 16-24, 28, 33).

On May 17, 2006, Landlord filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, arguing that Landlord, by virtue of its relationship with CalSTRS, enjoyed sovereign immunity from suit. (Dkt. No. 14). We denied that motion, finding that Landlord did not function as an arm of the State of California. (Dkt. No. 34, at 4-5).

On December 4, 2006, Landlord filed another Motion to Dismiss, arguing that because the citizenship of a partnership is the citizenship of the partners and CalSTRS is an "arm of the State of California," CSDV is not a "citizen" of any state, and is not subject to diversity jurisdiction. (Dkt. No. 38). We denied that motion, finding that CalSTRS is not an arm or alter ego of the State of California and, therefore, is a "citizen" of California for diversity jurisdiction purposes. (Dkt. No. 51).

On August 16, 2007, the parties filed cross-motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 250, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted).

Once the moving party meets this burden of production, the nonmoving party "may not rest

3

upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS[1]

Accenture argues that Landlord has inconsistently applied the term "Building" in the Lease since 2001. More specifically, Accenture argues that Landlord cannot claim that the Lease term "Building" includes the parking garage for real estate tax purposes, but then excludes the parking garage for operating expenses, the effect of which is to maximize Landlord's gains. Accenture argues that the plain meaning of "Building" does not include the parking garage and that, therefore, it is entitled to summary judgment on its claims for a declaration that it has overpaid real estate taxes since 2001 and damages for breach of contract or, in the alternative if "Building" does include parking garage, summary judgment on its claims for a declaration that it has overpaid operating expenses since 2001 and damages for breach of contract. Accenture also seeks attorney's fees and costs.

Landlord argues that the plain meaning of the Lease supports both its calculation of real estate taxes and operating expenses and that it is entitled to summary judgment on its counterclaim seeking a declaration that all charges under the Lease have been appropriate, as well as attorney's fees and costs. We will address the real estate tax and operating expense provisions in turn below.

### A. Real Estate Taxes

Under the Lease, Accenture must pay its share of taxes for each year. (Lease ¶ 4(B)).

---

[1] The Lease states, and the parties agree, that this dispute is governed by Minnesota law.

"Taxes" are defined to include "real estate taxes and assessments, both general and special, assessed or imposed with respect to the Land or the Building and any skyway bridges attached to the Building." (Lease ¶ 4(A)(iii)). The parties dispute whether real estate taxes have been accurately calculated since 2001. Accenture argues that under the plain language of the Lease, "Building" does not include the parking garage, and therefore it has been overcharged real estate taxes since 2001. Landlord argues that under the plain language of the Lease, "Building" does include the parking garage, and therefore seeks a declaration that it has charged Accenture the proper amount of real estate taxes. Because both motions hinge upon the definition of "Building," we must analyze whether there is disputed issue of fact with respect to the meaning of the term "Building" in the Lease.

Under Minnesota law, "whether a contractual provision is ambiguous is a legal question." *Dyrdal v. Golden Nuggets, Inc.*, 672 N.W.2d 578, 586 (Minn. App. 2003) (citing *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-47 (Minn. 2003)). A contractual provision is ambiguous if "it is reasonably susceptible to more than one meaning," and if so, "determining what the ambiguous provision means is a factual question." *Id.*

In this case, whether or not the term "Building" includes the parking garage is ambiguous. There are a number of instances where the plain language of the Lease reasonably supports the argument that the parking garage is not included within the definition of "Building." For example, the initial paragraph defining "Building" does not include the term parking garage. Also Exhibit G of the Lease specifically states that "[n]o animals, pets, bicycles or other vehicles shall be brought or permitted to be in the Building or the Premises." (Lease, Ex. G ¶ 10). If vehicles are not allowed in the Building, then it would be impracticable for the term "Building" to include a parking garage.

Additionally, the Rider to the Lease's description of Parking does not include the term "Building," and the definition of "Building" and other provisions which list the components of the Building do not include the term "Parking Garage." (Lease Ex. D, Ex. 1; Fifth Amendment Ex. B, C).

However, the Lease also includes phrases that could lead one to reasonably conclude that "Building" does include the parking garage. For example, Paragraph 9 of the Fifth Amendment to the Lease refers to "hourly parking *in* the Building" and "parking spaces *in* the Building." (Fifth Amendment ¶ 9) (emphasis added).[2] Additionally, both Exhibit D to the Lease and Exhibit C to the Fifth Amendment contain references to "P-1" and "P-2" in the Building. Accenture argues that Landlord has not presented specific evidence that P-1 and P-2 are indeed the "parking floors," but that the Lease may instead be referring to "power (as in utility), patio, portico, plaza, or even pool" levels. (Pl. Reply to Pl. MSJ at 6). While this may be true, Landlord has provided testimony that the parking levels are located directly below the building, and therefore these references contribute to the ambiguity surrounding the term "Building" in the Lease. (Traeger Dep. at 19).

Because the term "Building" is "reasonably susceptible to more than one meaning," we hold that it is ambiguous as a matter of law. *See Denelsbeck*, 666 N.W.2d at 346-37. Therefore, the determination of what "Building" actually means is a question of fact, and we may examine parol evidence to determine its meaning. *Id.*; *Nord v. Herreid*, 305 N.W.2d 337, 340 (Minn. 1981). The parties have presented some evidence of the negotiations, other similar transactions, and trade usage

---

[2] Accenture cites to Scott Hargadon's testimony that the inclusion of "Building" in this section was a mistake and that the correct term should have been "Property." (Hargadon Dep. at 54-55). However, Landlord denies that this was a mistake and points to the fact that this term was not revised in the Sixth, Seventh, Eighth, Ninth or Tenth Amendments to the Lease as evidence (Def. Resp. to Pl. Additional Facts ¶ 7). Because this is a disputed issue of fact, we cannot decide it on summary judgment.

in order to support each of their respective interpretations of "Building." Because these facts are disputed, however, we decline to decide this question of fact on summary judgment, and therefore, decline to decide whether or not real estate taxes have been properly calculated under the Lease since 2001.

### B. Operating Expenses

Under the Lease, Accenture is also liable for the "Tenant's Share" of "Operating Expenses." (Lease ¶ 4(B)). "Tenant's Share" is defined as "[a] ratio, the numerator of which shall be the total square footage of rentable area from time to time in the Leased Premises and the denominator of which shall be the total square footage of rentable area in the Building." (Schedule ¶ 4). Additionally, the Schedule and each Amendment to the Lease contains a specific percentage expressing the calculation of the "Tenant's Share." For example, the last sentence of the paragraph defining "Tenant's Share" in the Schedule states, "As of the date hereof, Tenant's Share expressed as a percentage is 7.539%." (*Id.*). When calculating this ratio, Landlord has not included the square footage of the parking garage as part of the "total square footage of rentable area in the Building." (Pl. Facts ¶ 26). Accenture argues that this computation is designed to maximize payments by minimizing the denominator, and that this formulation is inconsistent with the Landlord's inclusion of the parking garage in its calculation of real estate taxes since both calculations involve the term "Building." Landlord argues that it has charged Accenture the correct amount of operating expenses because the "rentable area" of the Building does not include the parking garage, as evidenced by the specific numeric percentages given in the Lease.

A defined term in the Lease cannot be given more than one meaning in the same document. Thus, Accenture is right that "Building" must be consistently interpreted throughout the Lease.

7

Nonetheless, a close reading of the Lease shows that the denominator of the "Tenant's Share" doesn't refer to the square footage of the whole Building, but more specifically, it refers to the "rentable area" of the Building. Consequently, even if we were to hypothetically adopt Landlord's interpretation that parking garage is included in the definition of "Building," the denominator of the "Tenant's Share" could still exclude the parking garage if it is not considered part of the "rentable area" of the Building. Therefore, we must examine what is meant by the phrase "rentable area" in the Lease.

While "rentable area" is not specifically defined under the Lease, it is a "cardinal principle of contract construction[] that a document should be read to give effect to all its provisions and render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S. Ct. 1212, 1219 (1994). Under Minnesota law, contract terms are read "in the context of the entire contract and [we] will not construe the terms so as to lead to a harsh and absurd result." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Also, we should "attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990). Accenture appears to be arguing that "rentable area of the Building" includes the parking garage because it rents parking spots from Landlord. However, Landlord argues that we must interpret the term "rentable area" so that it is consistent with the specific percentages included in the Schedule and its Amendments.

We agree with Landlord's interpretation and find that looking within the four corners of the contract, the term "rentable area" is unambiguous and does not include the parking garage. If the opposite was true and the parking garage was supposed to be included within the "rentable area" of

8

the Building, then the specific percentages in the Schedule and the ten Amendments to the Lease would all be inaccurate. Because we are instructed under Minnesota law to avoid such a harsh interpretation, we conclude that "rentable area" does not include the parking garage and thus the numeric percentages are consistent with the formula for calculating the "Tenant's Share."[3]

Furthermore, another court outside our jurisdiction came to the same result on almost identical facts. In *Sea Fare's American Café, Inc. v. Brick Market Place Associates*, a tenant was required to pay rent on its percentage share, which was based upon the amount of "rentable space within the Property," and the lease included the specific numeric percentages that the parties had agreed upon. No. 94-0077, 2002 WL 31455563, at *2 (R.I. Super. Ct. Oct. 25, 2002). Similar to this case, the main issue in *Sea Fare's American Café* was whether the parties intended to include the parking lot in the calculation of "rentable space." *Id.* The court held that the intention of the parties to exclude the parking garage from "rentable area" was clear from the face of the lease because if the parking garage was included in this calculation, then the numeric percentage given in the lease "would be wrong at the outset when the parties signed the lease." *Id.*

The same reasoning applies to the instant case. We decline to read the percentage terms given in the Schedule and all ten Amendments to the Lease as incorrect, but instead we find that as a matter of law "rentable area" within the Lease does not include the parking garage.

---

[3] Additionally, while we find the term "rentable area" unambiguous as a matter of law and need not look to parol evidence to resolve its meaning, it is worth commenting that the inclusion of specific percentages in the Lease appears to be to avoid just the dispute at issue in this motion. For example, Robert Traeger testified that the percentages were placed in the Lease for the parties to agree on exactly what Accenture's pro rata share was for the Operating Expenses. (Traeger Dep. at 107).

**CONCLUSION**

For the reasons described above, we deny Accenture's Motion for Summary Judgment and grant Landlord's Motion for Summary Judgment in part with respect to its counterclaim for a declaration that operating expenses are being properly calculated under the Lease. We deny Landlord's Motion in all other respects.[4]

It is so ordered.

                                                  Honorable Marvin E. Aspen
                                                  U.S. District Court Judge

Dated: November 19, 2007

---

[4] The parties are also seeking attorneys' fees and costs. Paragraph 23(E) of the Lease provides that "Tenant shall pay all of Landlord's costs, charges, and expenses, including without limitation, court costs and reasonable attorneys' fees, incurred in enforcing Tenant's obligations under this Lease or incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord, without Landlord's fault, to become involved or concerned." (Lease ¶ 23(E)). In addition, Footnote 61 in this same paragraph provides that "Landlord shall pay all of Tenant's costs, charges and expenses including without limitation, court costs, and reasonable attorneys' fees, incurred in successfully enforcing Landlord's obligations under this Lease in any litigation." (*Id.*). We decline to address the issue of attorneys' fees and costs at this stage of the litigation; however, we do note that Landlord's success with respect to its counterclaim may entitle it to the portion of its attorney's fees and costs attributable to this counterclaim.